IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| NATIONAL RENAL ALLIANCE, LLC, n/k/a RAI, II, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:10-0872 Judge Trauger |
| GAIA HEALTHCARE SYSTEMS, LLC, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER**

Pending before the court is the defendant's Motion to Dismiss Under Rule 12(b)(1) and Rule 12(b)(3) (Docket No. 6) to which the plaintiff has responded (Docket No. 8). For the reasons discussed herein, the defendant's motion will be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 17, 2010, the plaintiff, National Renal Alliance (NRA), filed its Petition to Confirm Arbitration Award. (Docket No. 1.) The Petition alleges that NRA is a Delaware LLC with its principal office located in Williamson County, Tennessee and its "member is a Delaware corporation with its principal office in Williamson County, Tennessee." (*Id.* at 1.) The plaintiff alleges that the defendant, Gaia Healthcare Systems, is a Colorado LLC with its principal office in Morrison, Colorado and its membership is from Colorado. (*Id.*)

NRA provided dialysis care to patients at more than 30 facilities in ten states. In conjunction with providing these services, NRA retained Gaia to provide "software products that

1

would meet NRA's needs." (*Id.* at 2.) In January 2007, NRA and Gaia entered into a Master Software License and Services Agreement (the "Agreement"), in which Gaia agreed to provide certain software products and services to NRA in exchange for payment. (*Id.*) Listing NRA's address in Franklin, Tennessee, the Agreement envisions that considerable portions of the Agreement, such as the provision of services and payment for services, would take place, at least in part, in this district. (*See generally id.*)

As to dispute resolution under the Agreement, Section 20A of the Agreement provided that, initially, the parties were to attempt "formal mediation," and, if the parties were unable to resolve the dispute within a set time period, the parties were required to submit to "final and binding" arbitration. (Docket No. 1 Ex. A at 8.) The "location of any arbitration will be in Denver, Colorado." (*Id.*) "Issues of arbitrability" were to be determined in accordance with federal law "relating to arbitration," but "all other aspects" were to be interpreted "in accordance with the laws of Colorado." (*Id.*) Section 20A also provides that "[t]he arbitrator's decision and award . . . may be entered in any court having jurisdiction thereof." (*Id.*)

Section 20B, titled "Governing Law," states that, "[s]ubject to Section 20A . . . this Agreement will be governed by the laws of the State of Colorado . . . . Subject to Section 20A, federal and state courts for the City and County of Denver will have exclusive jurisdiction over any Disputes, claims or controversies arising out of or relating to this Agreement. [NRA] hereby irrevocably waives any objection to the exclusive jurisdiction and venue of such courts." (*Id.* at 9.)

NRA alleges that the "software products that Gaia provided under the Agreement failed

2

to perform as expected, and a dispute arose between the parties concerning the Gaia products and services." (Docket No. 1 at 3.) After NRA terminated the Agreement in October 2007, the parties attempted to mediate, and, when that failed, Gaia filed its Demand for Arbitration with the Denver Regional Office of the American Arbitration Association (AAA) on October 17, 2008. (*Id.*; Docket No. 1 Ex. B.) On June 18, 2009, NRA filed its Answer and Counterclaim. (Docket No. 1 Ex. C.)

The arbitration was held from July 19-23, 2010 in Denver, Colorado. (Docket No. 1 at 3.) On September 13, 2010, the AAA served the decision and award on the parties. (*Id.*) The arbitrator denied Gaia's claims in their entirety and awarded $305,000 to NRA as damages for Gaia's breach of contract. (Docket No. 1 Ex. D.)

Just four days after the award was issued, NRA filed its Petition, asking this court to confirm the award and enter a judgment for NRA of $305,000 plus interest and costs. (Docket No. 1 at 4.) NRA claims that Gaia has not paid any of the award or "otherwise fulfilled its obligations under the Award," and, therefore, NRA seeks relief under the Federal Arbitration Act (FAA). (*Id.* at 3.) On October 25, 2010, Gaia filed the pending motion.

## ANALYSIS

### I. Gaia's Motion to Dismiss

Gaia maintains that this case must be dismissed under Fed. R. Civ. P. 12(b)(1) because the court lacks subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(3) because venue is improper in this court. (Docket No. 7 at 1.) In its relatively brief argument, Gaia maintains that the "Agreement confers exclusive jurisdiction over the subject matter of NRA's Petition [] on the

federal and state courts for the City and County of Denver, Colorado." (*Id.* at 3.)

That is, Section 20B of the Agreement provides that disputes arising out the Agreement must be resolved in Denver, Colorado courts. (*Id.* at 3-4.) While Section 20B is subject to Section 20A and Section 20A states that "any court having jurisdiction thereof" may enforce (or confirm) the award, Gaia argues that this phrase "clearly refers to the right of the courts upon which jurisdiction is conferred in Section 20B" that is, Denver courts, "to confirm an arbitration award." (*Id.*)

Gaia also relies on the provision in Section 20A that states that "all other aspects" of the arbitration, aside from issues of arbitrability, are to be resolved in accordance with Colorado law. (*Id.* at 4.) Gaia concludes with a discussion of Colorado law, which provides that "applications for judicial relief" from the arbitration proceeding shall be held in the court where the arbitration was held. (*Id.* at 4-5 citing Colo. Rev. Stat. § 13-22-205, § 13-22-227.) Gaia also points to a Massachusetts state court decision in which the court, surveying state law, noted that, in Colorado, "an application to the court with respect to the arbitration agreement" must be made in the court where the arbitration was held. (*Id.* citing *Abraham-Copley Square Limited P'Ship v. Badaoui*, 2007 WL 1666556, *5 (Mass. App. Ct. June 6, 2007))[1].

---

[1] Gaia's discussion of Colorado arbitration law here is misplaced. As to "arbitrable" issues, such as confirmation of the award, the Agreement provides that federal arbitration law applies and the FAA generally applies to arbitration disputes involving interstate commerce. *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 195 (2000)(applying FAA to resolve post-award venue dispute despite underlying contract provision that stated that Mississippi law governed the dispute); *see also Express Scripts, Inc. v. Aegon Direct Marketing Services*, 516 F.3d 695, 699 (8th Cir. 2008)("Although the FAA applies to all arbitration agreements involving transactions in maritime or interstate commerce, arbitration disputes will be considered in federal court only when there is diversity of citizenship or an independent basis

In response, NRA first argues that Gaia's Rule 12(b)(1) motion is misplaced because, regardless of the content of the Agreement, the court has subject matter jurisdiction. (Docket No. 8 at 1.) That is, the court has diversity jurisdiction under 28 U.S.C. § 1332 because of the citizenship of the parties and the amount in controversy, and "a forum selection clause [] addresses venue, not subject matter jurisdiction." (*Id.* at 2 citing *e.g. Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 948 (6th Cir. 2002)("forum selection clauses in contracts do not deprive courts of jurisdiction."))

NRA is correct on this point. While the authority to dismiss a case based upon a forum selection clause has been somewhat unsettled, it appears relatively clear in the Sixth Circuit that courts have subject matter jurisdiction, even if a forum selection clause dictates that the litigation should have been filed elsewhere. *Gibson*, 289 F.3d at 948; *Dawalt v. Purdue Pharma, LP*, 397 F.3d 392, 399 (6th Cir. 2005); *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 825 (6th Cir. 2009); *Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 371 (6th Cir. 2008)(Moore, J. concurring); *Godsey v. Miller*, 9 Fed. Appx. 380, 383 (6th Cir. 2001)("the issue of a forum selection clause is an independent contractual concern created by the actions of the parties, and is not linked to the inherent subject-matter jurisdiction of the court.")

While the issue before the court is not jurisdictional, forum selection clauses will still be

---

for federal jurisdiction.")(internal citation omitted). It is worth noting, however, that Gaia overlooks the statutory provision of Colorado law specifically concerned with "confirmation." Colo. Rev. Stat. § 13-22-222. This provision provides that, upon receiving notice of the award, the prevailing party may seek confirmation from any court of competent jurisdiction in the state. *Id;* Colo. Rev. Stat. § 13-22-201(3).

enforced (and cases dismissed) under the appropriate circumstances. *See id.* On the issue of confirming an award, Section 9 of the FAA states in relevant part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected . . . . If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.
> 9 U.S.C. § 9.

NRA maintains that the parties did specify a court in the Agreement, that is, "any court having jurisdiction thereof," which includes this court, which has diversity jurisdiction over this matter. (Docket No. 8 at 3.) NRA argues that, while Section 20B states that disputes involving the interpretation of the Agreement would be resolved under Colorado law in Denver courts, Section 20B is made "subject to" Section 20A, which explicitly and specifically concerns the courts in which awards may be confirmed. (*Id.* at 3-4 citing *E-470 Pub. Highway Auth. v. Jagow*, 30 P.3d 798, 801 (Colo Ct. App. 2001) for the "basic principle of contract interpretation that a more specific provision controls the effect of general provisions.")

NRA also relies heavily on *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193 (2000), which is a factually similar, but not identical, case. As here, the parties in *Cortez Byrd* had an underlying contractual agreement that stated that the arbitration award could be confirmed "in any court having jurisdiction thereof." *Id.* at 195. While, under that contract, the law of Mississippi governed the parties' dispute, the underlying contract did not have a forum selection clause. *Id.* That is, "no court [was] specified in the agreement of the parties." 9 U.S.C. § 9.

6

The issue in *Cortez Byrd*, then, was whether Section 9 was "permissive," that is, whether, where no court was specified, the party was required to confirm the award in the district where the arbitration had occurred (the Northern District of Alabama). 529 U.S. at 195-96. The Court rejected the notion that Section 9 of the FAA required a party to confirm the award in the same district in which the arbitration was held. *Id.* The Court held that Section 9 allows an action to confirm the award to be brought "either where the award was made or in any district proper under the general venue statute." *Id*. The relevant post-award action had been brought in the Southern District of Mississippi, where the underlying contract was to be performed. *Id.* at 195-96. The Court held that venue was proper in that district because, under the general venue statute applicable to diversity actions, "a substantial part of the events or omissions giving rise to the claim occurred" there. *Id.* citing 28 U.S.C. § 1391(a)(2).

NRA argues that *Cortez Byrd* clearly demonstrates that its Petition is appropriately filed in this court. That is, it was not obligated, under Section 9, to file the action in the same district in which the arbitration took place, and, given that the Agreement was to be performed in this district, venue is proper under Section 1391(a)(2). (Docket No. 8 at 5.) The clear distinction between this case and *Cortez Byrd* is that, here, the Agreement had a forum selection clause that dictated that another court had "exclusive jurisdiction" over disputes arising out of the Agreement.

Despite this distinction, it appears clear to the court that NRA is still entitled to proceed in this district if: (1) NRA's interpretation of the "any court having jurisdiction thereof" language is correct and the parties agreed that Section 9 actions (as opposed to other actions

7

arising from the Agreement) could be filed in any court with jurisdiction, or, (2) even if NRA is wrong in its interpretation of that language, the parties' selection of Denver, Colorado as the venue for Section 9 actions is trumped by the finding in *Cortez Byrd* that Section 9 is "permissive" and actions may be brought in "any district proper under the general venue statute."

The first point is one of contract interpretation and, consistent with the Agreement, should be analyzed under Colorado law. The *E-470* case discussed above provides a summary of the basic principles of contract interpretation:

> Contracts must be construed to give effect to the intent of the parties. In determining intent, we construe the contract as a whole, giving effect to every provision. A contract is not to be interpreted in a vacuum. Rather, a court must consider the subject matter of the contract, the object of making it, the sense in which the parties naturally understood it at the time it was made, and the parties' purposes and objects. In appropriate circumstances, the parties' intent may be determined by construing together separate documents that pertain to the same subject matter, even if the documents are not executed by the same parties. This is particularly true of documents executed simultaneously. Further, it is a basic principle of contract interpretation that a more specific provision controls the effect of general provisions.
>
> 30 P.3d at 801 (internal citations omitted).

The Agreement at issue is a standard-form licensing agreement, and it appears unlikely that discovery and fact gathering would reveal any clear intent of the parties as to the intended meaning of the terms in Sections 20A and 20B. Additionally, the Agreement is not particularly clear – Section 20B does say that Denver courts have "exclusive jurisdiction" over "any disputes" arising out of the Agreement, but Section 20A states that actions to enforce the award "may be entered in any court having jurisdiction thereof."

8

Plainly, the positions of the parties are both reasonable. The "more reasonable" position, however, is NRA's. While Gaia maintains that the "any court having jurisdiction thereof" language "clearly refers" to the "courts upon which jurisdiction is conferred in Section 20B," this point is not supported by the language of the Agreement. As noted above, the provisions of Rule 20B are explicitly made subject to the provisions of Section 20A (not the other way around).

While the scope of Section 20B is clearly limited by Section 20A, there is nothing to indicate that the scope of the "any court having jurisdiction" language is to be limited. Rather, this clause is permissive, stating that an action to enforce the award "may" be brought in "any" court having jurisdiction. If the Agreement were designed to limit jurisdiction over enforcement actions, it is reasonable to assume that this permissive language would have been limited or made "subject to" the venue limitations of Section 20B.

In *Cortez Byrd*, the Court discussed that, generally, at the time of contracting, the parties are more likely to be concerned about where the arbitration takes place than where post-arbitration enforcement proceedings occur. 529 U.S. at 201. That is, the parties may seek out a certain panel in a certain location due to the needs of the parties at the time or the expertise of the panel, but, once the arbitration is over and the parties go their separate ways, the parties are more likely to desire "flexibility" in terms of the post-award proceedings. *Id.* In light of all of this, the court concludes that the most reasonable interpretation of the Agreement is that the parties, as NRA argues, selected "any court with jurisdiction" as the forum for enforcement proceedings. This conclusion places this case squarely within the scope of *Cortez Byrd*, and, so

9

long as venue is proper in this district under the general venue provisions, Gaia's motion is not viable.[2]

There appears to be no dispute that, given that a substantial portion of the Agreement was to be performed in Middle Tennessee, this district had a central role in the underlying contract dispute, and, therefore, venue is proper under Section 1391(a)(2). The defendant's Motion to Dismiss Under Rule 12(b)(1) and Rule 12(b)(3) (Docket No. 6) is **DENIED**.

It is so Ordered.

Entered this 9th day of November 2010.

_____
ALETA A. TRAUGER
United States District Judge

---

[2] Because the court determines that the parties did not select Denver, Colorado as the forum for confirmation proceedings, it is not necessary to reach the second issue noted above. However, a fair reading of the broad language of *Cortez Byrd* and subsequent cases is that, even if the parties had explicitly selected Denver as the venue for Section 9 proceedings, venue would still be proper in this district. Again, the *Cortez Byrd* Court determined that, where a venue was not specified, the language in Section 9 stating that a party "may" apply to the court in which the arbitration occurred was permissive. Where the venue is specified, Section 9 uses the same "may" language – that is, a party "may" seek relief from the court that the parties specified. *See also B-S Steel of Kansas, Inc. v. Texas Industries, Inc.*, 2004 WL 946894, *5 (D. Kan. April 28, 2004)(in light of *Cortez Byrd*, rejecting argument that Section 9 is only permissive when the parties have not specified a forum); *Basic Fun Inc. v. Pop Marketing Group, Inc.*, 2006 WL 1648982, *1 (E.D. Pa. June 12, 2006)(forum selection clause stating that the parties "agree to be subject to" Kentucky courts for enforcement of the award was trumped by reasoning of *Cortez Byrd*).