IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| NATIONAL RENAL ALLIANCE, LLC, | ) | |
| n/k/a RAI II, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:10-cv-00872 |
| | ) | Judge Trauger |
| GAIA HEALTHCARE SYSTEMS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the court is the Motion to Vacate and for Stay of Proceedings filed by defendant Gaia Healthcare Systems, LLC (Docket No. 12), to which the plaintiff has filed a response (Docket Nos. 11, 14). For the reasons discussed below, the defendant's motion will be denied.

## BACKGROUND

This action concerns the plaintiff's attempt to confirm an arbitration award. The defendant, Gaia Healthcare Systems, LLC ("Gaia"), sells software to the owners of dialysis facilities.[1] The plaintiff, National Renal Alliance, LLC ("NRA"), provides dialysis care to patients at more than 30 facilities in multiple states. NRA used three of Gaia's software products: (1) GE billing software (the "GE Software"); (2) electronic medical records software

---

[1] Unless otherwise noted, the facts are drawn from the plaintiff's Petition to Confirm Arbitration Award (Docket No. 1) and the parties' briefs. The relevant procedural facts are undisputed.

1

to be used with the billing software (the "EMR Software"); and (3) middleware software to transfer information from the EMR Software to the GE Software (the "Middleware").

On January 25, 2007, NRA and Gaia executed a written agreement regarding the Middleware and the GE Software (the "Agreement"). The Agreement contains an arbitration clause providing that the parties agree to submit "any controversy or claim arising under this Agreement" to mediation, and, if the mediation is unsuccessful, to binding arbitration. (Docket No. 1 ¶ 9.) The clause provides that arbitration is to be held in accordance with American Arbitration Association ("AAA") rules in Denver, Colorado. (*Id.*) The parties did not execute a written agreement regarding the EMR Software.

NRA experienced performance issues with the software, and a dispute arose between the companies. In October 2007, NRA sent a letter to Gaia terminating the Agreement. On October 17, 2008, after an unsuccessful attempt at mediation, Gaia filed a demand for arbitration with the AAA, alleging that NRA had breached the Agreement. On June 18, 2009, NRA filed an answer and a counterclaim, alleging breach of contract, fraud, and violation of the Colorado Consumer Protection Act for Gaia's actions regarding the GE Software and the Middleware.

Several months later, in September 2009, NRA filed a First Amended Complaint in Tennessee state court, asserting claims against Gaia and Bruce Thompson, Gaia's owner.[2] Specifically, NRA asserted claims for: (1) breach of contract and breach of warranty against Gaia regarding the EMR Software; (2) fraud and negligent misrepresentation against Gaia and Thompson regarding the EMR Software; (3) fraud and negligent misrepresentation against

---

[2] It is unclear when NRA filed the initial complaint in that lawsuit.

Thompson regarding the GE Software and Middleware; and (4) violation of the Tennessee Consumer Protection Act ("TCPA") against Gaia and Thompson. (Docket No. 13, Ex. 1 at 6-10.) The consumer protection claim was based on Gaia and Thompson's misrepresentations regarding the EMR Software, the GE Software, and the Middleware. (*Id.* at 9-10.) The state-court lawsuit is still pending.

In June 2010, NRA filed an Amended Counterclaim in the arbitration, adding a claim against Gaia for violation of the TCPA for allegedly failing to inform NRA that NRA was being used as a beta-testing site for Gaia's software. (Docket No. 10, Ex. 1 at 7.) Gaia objected (1) that the claim was duplicative of the claim that NRA was already pursuing in Tennessee state court and (2) that the Agreement provided that the parties' dispute was to be governed by Colorado law "and, therefore, the Arbitrator lacked jurisdiction to adjudicate the TCPA claim." (Docket No. 14 at 4 n.1.) Gaia further objected that NRA sought identical damages in both the arbitration and the state-court action. (*Id.* at 5.)

Over these objections, the arbitrator heard the parties' claims. On September 13, 2010, the AAA served an Award on the parties awarding $305,000 in damages to NRA. In relevant part, the Award stated:

> 1. The claim of Claimant, Gaia Healthcare Systems, LLC, is denied in its entirety.
>
> 2. Respondent, National Renal Alliance, LLC, is awarded $305,000.00 as damages for Claimant's breach of contract. Respondent's remaining claims are denied.

(Docket No. 1, Ex. 4 at 1.) The Award did not contain any further explanation of the arbitrator's decision.

NRA then filed a Petition to Confirm Arbitration Award in this court. (Docket No. 1.) Gaia filed a Motion to Dismiss, arguing that, under the Agreement, courts outside Colorado have no jurisdiction over NRA's petition. (Docket No. 6.) The court denied the Motion to Dismiss, finding that this court does have jurisdiction. (Docket No. 9 at 7-10.)

Now, Gaia has filed a Motion to Vacate and for Stay of Proceedings, pursuant to 9 U.S.C. §§ 10 and 12. (Docket No. 12.) Gaia argues that the court should vacate the arbitration award because the arbitrator exceeded his powers.

## ANALYSIS

### I. Standard for Vacating an Arbitration Award

The Federal Arbitration Act, 9 U.S.C. § 2 *et seq.*, controls whether a federal court may confirm or vacate an arbitration award. It provides that a court may vacate an award in four instances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

A court's review of an arbitrator's award is "very narrow; one of the narrowest standards of judicial review in all of American jurisprudence." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005) (quotation marks omitted). "'As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.'" *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). When a party questions the arbitrability of a claim, however, "absent 'clear and unmistakable' evidence that contracting parties intended an arbitrator (rather than a court) to resolve questions of arbitrability, courts 'should independently decide whether an arbitration panel has jurisdiction over the merits of any particular dispute.'" *Solvay Pharms., Inc. v. Duramed Pharms., Inc.*, 442 F.3d 471, 477 (6th Cir. 2006) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 941, 945 (1995)) (quotation marks omitted).

In addition, the Sixth Circuit has held that "a reviewing court may vacate an award where the arbitrators have manifestly disregarded the law."[3] *Dawahare v. Spencer*, 210 F.3d 666, 669

---

[3] There is some question as to whether an arbitrator's manifest disregard of the law is still a valid ground for vacatur. In *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008), the Supreme Court held that "§§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification." *Id.* at 584.

*Hall Street* addressed whether private parties can, via contract, provide for heightened judicial review of an arbitrator's legal findings. *Id.* at 579. The Court found that they cannot. *Id.* at 584. In so holding, the Court distinguished review for "manifest disregard" from "general review for an arbitrator's legal errors" and rejected the argument that, "if judges can add grounds to vacate (or modify), so can contracting parties." *Id.* at 585.

In an unpublished opinion, the Sixth Circuit explicitly held that *Hall Street* "did not foreclose federal courts' review for an arbitrator's manifest disregard of the law." *Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 Fed. Appx. 415, 418 (6th Cir. 2008); *see also Dealer Computer Servs. v. Dub Herring Ford*, 547 F.3d 558, 561 (6th Cir. 2008) (stating that "[a] court

(6th Cir. 2000). This, too, is a "very narrow standard of review." *Id.* (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir.1995)). The Sixth Circuit has explained:

> An arbitration decision "must fly in the face of established legal precedent" for us to find manifest disregard of the law. An arbitration panel acts with manifest disregard if "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." Thus, to find manifest disregard a court must find two things: the relevant law must be clearly defined and the arbitrator must have consciously chosen not to apply it. *See M & C Corp. v. Erwin Behr GmbH & Co.*, 87 F.3d 844, 851 n. 3 (6th Cir.1996) (noting that if its review of an arbitral award were based on FAA standards, there was no manifest disregard since any mistake in applying the law was inadvertent and not based on a conscious decision to ignore the law).

*Id.* at 669 (citations omitted). Furthermore, "[a]rbitrators are not required to explain their decisions," and, "[i]f they choose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law." *Id.*

## II.    Vacatur of the Arbitration Award

---

may also vacate an award on non-statutory grounds if the arbitration panel demonstrates a 'manifest disregard of the law'" but listing a *but see* citation to *Hall Street*). Other Sixth Circuit cases have questioned whether, after *Hall Street*, manifest-disregard review is still valid. *Grain v. Trinity Health*, 551 F.3d 374, 380 (6th Cir. 2008) (stating that *Hall Street* "casts some doubt on the continuing vitality of that theory"); *Martin Marietta Materials, Inc. v. Bank of Okla.*, 304 Fed. Appx. 360, 362 (6th Cir. 2008) (assuming, but not deciding, that manifest-disregard review survived *Hall Street*). But those cases do not purport to overrule *Coffee Beanery*. *See Grain*, 551 F.3d at 380 (citing *Coffee Beanery*, 300 Fed. Appx. 415).
     Accordingly, the court will assume that manifest disregard of the law remains a valid ground for vacating an arbitration award. *See, e.g.*, *Amway Global v. Woodward*, No. 09-12946, 2010 U.S. Dist. LEXIS 105762, at *31 n.5 (E.D. Mich. Sept. 30, 2010) (assuming that such review is valid); *Thomas Kinkade Co. v. Lighthouse Galleries, LLC*, No. 09-10757, 2010 U.S. Dist. LEXIS 6443, at *18 n.13 (E.D. Mich. Jan. 27, 2010) (finding that such review is valid).

Here, the defendant argues that the arbitrator exceeded his power and that the arbitration award must be vacated under 9 U.S.C. § 10(a)(4). (Docket No. 13 at 7-10.) In response, the plaintiff argues that the arbitrator was unambiguously empowered to award damages on NRA's contract claim. (Docket No. 11 at 3-4.)

Specifically, Gaia argues that the arbitrator exceeded his power in three ways:

> [By] (1) adjudicating [TCPA] claims that NRA is simultaneously litigating in a separate state court action, (2) adjudicating TCPA claims even though the parties explicitly agreed that their dispute would be governed by Colorado law, and (3) by adjudicating and awarding identical damages that NRA is simultaneously pursuing against Gaia in a separate state court action.

(Docket No. 13 at 1.) The defendant argues that, by simultaneously pursuing certain claims and damages in state court, NRA waived "the arbitrability of its claims against Gaia" (*id.* at 7) and that the arbitrator improperly adjudicated non-arbitrable claims.

As an initial matter, the defendant's waiver argument misses the mark. "[A] party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delaying its assertion to such an extent that the opposing party incurs actual prejudice." *Hurley v. Deutsche Bank Trust Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010) (quotation marks omitted). The cases cited by the defendant note that waiver is a flexible concept. *Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 772 (10th Cir. 2010) ("[T]here is no set rule as to what constitutes a waiver or abandonment of the arbitration agreement; the question depends upon the facts of each case . . . ."); *S. Sys. v. Torrid Oven, Ltd.*, 105 F. Supp. 2d 848, 854 (W.D. Tenn. 2000) ("There is no rigid rule as to what constitutes waiver of the right to arbitrate; the issue must be decided based on the

7

circumstances of each particular case.").

In a typical case finding waiver, a party has voluntarily litigated in court for some period of time and has subsequently attempted to compel arbitration. *E.g.*, *Hurley*, 610 F.3d at 338-39; *S. Sys.*, 105 F. Supp. 2d at 849-50. Here, in contrast, NRA never took any action that was "completely inconsistent with any reliance" on the parties' arbitration agreement. The alleged waiver occurred when NRA brought a TCPA claim in state court.[4] But, by the time that claim was filed, NRA had already been pursuing claims in arbitration for several months. Thereafter, NRA continued to participate in the arbitration. NRA's actions were entirely consistent with its view that the claims that it initially filed in arbitration were arbitrable.[5]

Nor does the fact that NRA sought identical damages in the state-court suit constitute a waiver of arbitrability. NRA's claims in state court included claims against Bruce Thompson for conduct regarding the GE Software and the Middleware. NRA's claims in arbitration, meanwhile, were against Gaia for conduct regarding the GE Software and the Middleware. It is unremarkable that the damages for the claims against Thompson and Gaia overlapped, because the claims involved the same software. NRA's actions were not inconsistent with its decision to

---

[4] The other state-court claims against Gaia were properly filed in court, because they concerned the EMR Software, which was not covered by the parties' arbitration agreement. Those claims could not possibly have waived NRA's ability to arbitrate its claims concerning the GE Software and the Middleware.

[5] Furthermore, the Agreement provides that arbitration shall occur under the rules of the AAA. Notably, AAA Commercial Arbitration Rule 48 provides that "[n]o judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate." R. 48(a), *available at* http://www.adr.org/sp.asp?id=22440.

8

pursue damages against Gaia in arbitration.[6]

Thus, NRA did not waive its right to arbitrate the claims contained in its June 2009 arbitration counterclaim. At most, NRA's actions in the state-court lawsuit were inconsistent with its later assertion of a second TCPA claim in arbitration.[7]

But, even if NRA waived its right to arbitrate the TCPA claim, that does not provide a basis for the court to vacate the arbitration award. The arbitrator flatly denied the TCPA claim, and the defendant has provided no authority for the proposition that an arbitrator exceeds his power by *denying* a non-arbitrable claim. In fact, given the brevity of the arbitration award, it is possible that the arbitrator reasoned that NRA *had* waived the TCPA claim. Therefore, the court cannot say that the arbitrator's award exceeded his power or "manifestly disregarded" the law of waiver.

Similarly, even if the TCPA claim is invalid because Tennessee law does not apply, that fact does not provide a basis for vacatur. Again, the arbitrator denied the TCPA claim. It is possible that he reasoned that, under the choice-of-law terms of the Agreement, the TCPA was

---

[6] The plaintiff correctly points out that Gaia confuses the propriety of *collecting* on duplicative judgments with the propriety of pursuing claims that seek overlapping damages. (Docket No. 11 at 6-7.) Although a plaintiff may recover its full damages only once, it may pursue overlapping judgments against multiple defendants. *See, e.g.*, Restatement (Second) of Torts § 875 ("Each of two or more persons whose tortious conduct is a legal cause of a single and indivisible harm to the injured party is subject to liability to the injured party for the entire harm."); *Williams v. Ocean Transport Lines, Inc.*, 425 F.2d 1183, 1191 (3d Cir. 1970) (noting the "general rule[s]" that "an unsatisfied claimant may pursue a second joint tort-feasor even after judgment against a first" and that "a claimant is entitled to only one satisfaction"). If NRA ultimately receives a judgement in Tennessee state court that awards duplicative damages, Gaia can raise any issues regarding collection with that court.

[7] The plaintiff points out, however, that the two TCPA claims were premised on different conduct. (Docket No. 11 at 7-8.)

inapplicable.

Ultimately, the defendant cannot escape the fact that the arbitrator awarded damages to NRA solely for breach of contract. There is no doubt that, pursuant to the arbitration provision in the Agreement, NRA's breach-of-contract claim was arbitrable. Because the arbitrator did not exceed his power or manifestly disregard the law by awarding damages on that claim, the court will not vacate the award.

### III. Stay of NRA's Petition

Finally, the defendant argues that the court should stay NRA's Petition to Confirm Arbitration Award, pursuant to 9 U.S.C. § 12. It argues that NRA's state-court TCPA claim should be dismissed and that NRA should not be allowed to recover damages that are duplicative of the $305,000 arbitration award. (Docket No. 13 at 10-11.) According to the defendant, "[w]hile principles of issue and/or claim preclusion should clearly be applied in Gaia's favor by the state court, there is no guarantee the state court will agree," and, by granting a stay, "this Court can assess the fairness of the state court's [decisions]." (*Id.* at 11.)

Section 12 provides, in relevant part:

> Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. . . . *For the purposes of the motion* any judge who might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award.

9 U.S.C. § 12 (emphasis added). Thus, the statute does not allow for an open-ended stay once a court has decided that there is no basis to vacate the arbitration award. Instead, "[a] stay of

10

proceedings to confirm an arbitration award is contemplated only in order to permit consideration of motions to vacate, modify or correct an award." *Marsillo v. Geniton*, No. 03 Civ. 2117, 2004 U.S. Dist. LEXIS 9965, at *12 (S.D.N.Y. May 28, 2004).

In any event, it is not the role of this court to supervise future rulings of the Tennessee state court. Accordingly, the court will deny the defendant's request for a stay.

## **CONCLUSION**

For all of the reasons discussed above, the court will deny the defendant's Motion to Vacate and for Stay of Proceedings. The plaintiff requests that the court confirm the arbitration award and enter judgment in NRA's favor, pursuant to 9 U.S.C. § 9. (Docket No. 14 at 5.) Because there is no basis for vacating the arbitration award, the court will grant the plaintiff's request.[8] 9 U.S.C. § 9 ("[T]he court must grant . . . an order [confirming the arbitration award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 . . . .").

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[8] NRA further seeks an award of attorney's fees incurred in responding to the Motion to Vacate, arguing that the defendant's motion is frivolous. (Docket No. 11 at 8 (citing *Chambers v NASCO, Inc.*, 501 U.S. 32, 35 (1991)).) The court will decline this request.